**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**COLUMBUS DIVISION**

| | | |
|---|---|---|
| MAXWELL BADER,<br><br>and<br><br>ZACHERIAH KING,<br><br>Plaintiffs,<br><br>vs.<br><br>BLUE FRONT FINANCIAL, LLC dba Ladder Loans,<br><br>and<br><br>CLEARONE ADVANTAGE, LLC,<br><br>Defendants. | : | Case Number: 24-4265<br><br>District Judge<br><br>Magistrate Judge<br><br>**COMPLAINT AND REQUEST FOR DECLARATORY RELIEF**<br><br>**DEMAND FOR JURY TRIAL** |

For their Complaint, Plaintiffs Maxwell Bader and Zacheriah King state the following claims for relief:

## INTRODUCTION

The Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681b(f) regulates the access and use of consumer reports in order to protect consumer privacy. This case involves the illegal use of and access to the private financial data in the consumer reports of likely tens of thousands of financially distressed consumers. The information was accessed for the illegal purpose of marketing debt settlement services. Blue Front Financial, LLC dba Ladder Loans ("Ladder Loans") obtained lists of consumer data, lists referred to as "pre-screened lists," including Plaintiffs. Ladder Loans used the lists to market the debt settlement services of ClearOne Advantage, LLC ("ClearOne").

The pre-screened lists at issue are compiled by a consumer reporting agency using filters including a base level of unsecured debt balances, a minimum level of unsecured trade lines, and various other filters bearing on a consumer's credit worthiness. The pre-screened lists constitute consumer reports that may only be accessed and used for a permissible purpose. 15 U.S.C. § 1681b(f); see also *Trans Union Corp. v. FTC*, 245 F.3d 809 (D.C. Cir. 2001).

Accordingly, Plaintiffs Maxwell Bader and Zacheriah King bring this action to obtain monetary damages, injunctive relief, attorneys' fees, their costs in this action, and any other relief to which they may be entitled to compensate them for violations of the FCRA, 15 U.S.C. § 1681, et seq., invasion of privacy, the Ohio Consumer Sales Practices Act, Oh. Rev. Code §§ 1345.01 to 1345.99 ("OCSPA"), fraud, civil conspiracy, and the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. § 1691, et seq., all of which were violated as part of a venture to advertise, promote, and operate a business of soliciting clients for debt settlement services.

**JURISDICTION AND VENUE**

1. This Court maintains subject matter jurisdiction pursuant to the FCRA, 15 U.S.C. § 1681, et seq., and the ECOA, 15 U.S.C. § 1691, et seq,. as further alleged herein.

2. This Court may also exercise supplemental jurisdiction over the related state law claims arising out of the same nucleus of operative facts which give rise to any federal law claims under 28 U.S.C. § 1367.

3. Venue in the Southern District of Ohio is proper in that Defendants each transact business in this District and a substantial part of the events giving rise to the claim occurred in this District.

4. Defendants regularly engage in business with, and direct business at, Ohio consumers and have otherwise availed themselves of the Ohio marketplace and secured the

benefits of that marketplace. Such conduct includes, among other things, holding themselves out as a marketing company, loan broker, or debt settlement company providing services to Ohio residents; directing business solicitations into the State of Ohio, directed at indebted Ohio residents; contracting in Ohio with Ohio consumers for various services including debt settlement; and offering to perform and/or performing activities for Ohio residents including debt settlement services.

5. Specifically, Defendants had actual knowledge or acted with reckless disregard as to the deceptive nature of the mailing, the illegal nature of the data used in the mailing campaign at issue, that a portion of the mailers were directed to Ohio consumers (including Exhibits A and B), and that the mailers were in reality debt settlement solicitations seeking to retain Ohio consumer clients, including Maxwell Bader and Zacheriah King.

6. Defendants, acting in concert, conspired to illegally obtain protected consumer reporting data and mail to tens of thousands of Ohioans the illegal solicitations at issue in this Complaint, or substantially similar solicitations.

7. Defendants intentionally targeted thousands of Ohioans at their residential addresses located in the State of Ohio and knew their conduct would injure these consumers in the State of Ohio.

8. Each Defendant played a significant and necessary role in the conspiracy described in this Complaint.

9. This Court has jurisdiction over the parties and the subject matter of this action.

## PARTIES

10. The Plaintiffs to this lawsuit are as follows:

(a) Maxwell Bader ("Bader") is an individual person who resides at 3131 Basil Western Road NW, Baltimore, Ohio 43105.

(b) Zacheriah King ("King") is an individual person who resides at 314 Scott Ave., Vandalia, Ohio 45377.

11. The Defendants to this lawsuit are as follows:

(a) Ladder Loans is a California limited liability company doing business in Ohio and located at 25361 Commercentre Drive, Suite 100 B, Lake Forest, California 92630.

(b) ClearOne is a Maryland limited liability company doing business in Ohio and located at 1501 South Clinton Street, Suite 320, Baltimore, Maryland 21224.

12. For the purposes of this Complaint, unless otherwise indicated, "Defendant" or "Defendants" includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of Defendants named in this caption.

13. Defendants, acting in concert with each other, unlawfully obtained Plaintiffs' consumer reports and used them to illegally obtain information for the purpose of sending deceptive solicitations for debt settlement services. Defendants have misused the illegally obtained data of Plaintiffs, as well as likely tens of thousands of Ohioans.

14. As such, Plaintiffs seek damages for the harm caused by Defendants' unlawful acts and a declaration that Defendants have acted unlawfully.

## STATEMENT OF FACTS

15. Defendants engaged in a scheme to obtain and use protected consumer reporting data to market debt settlement services via the mailers directed to Bader and King in the State of Ohio.

16. To that end, Ladder Loans, through an authorized agent, and with the knowledge and at the direction of ClearOne, compiled or directed an agent to compile a "pre-screened list" containing the names and addresses of consumers in financial distress.

17. Ladder Loans obtained and used these pre-screened lists containing the names and addresses of consumers who met certain criteria such as minimum debt balances, high interest rates, high credit utilization, etc.

18. These lists are compiled by a consumer reporting agency using the filters supplied to the consumer reporting agency by Ladder Loans or its marketing agent.

19. Ladder Loans then, either directly or through a duly authorized agent, obtained a list, or lists, from TransUnion.

20. These lists constitute a consumer report for each consumer identified therein pursuant to the FCRA. These lists included both Bader and King.

21. Ladder Loans, along with or with the knowledge of ClearOne, then arranged for the preparation and mass mailing of marketing letters to the consumers on the pre-screened lists obtained from the consumer reporting agency.

## THE LADDER LOANS MAILED SOLICITATION

22. Bader and King each received nearly identical mailed solicitations from Ladder Loans. Attached as Exhibits A and B and incorporated herein.

23. Through the criteria used to populate the mailing campaign, Defendants specifically target consumers under severe financial distress.

24. The Ladder Loan mailer is designed to prey on financially distressed consumers by promising a simple solution to their overwhelming debt.

25. However, the same criteria used to populate the campaign actually prevent any responding consumer from obtaining a loan, particularly not at the attractive rates highlighted in each mailed solicitation.

26. Even with actual knowledge that a consumer will not qualify, the mailers promote a Flexible Personal Loan through Ladder Loans to "help you reduce your monthly debt payments or get cash for any purpose."

27. An infographic along the top of the mailer advises each Plaintiff of the "SAVINGS AVAILABLE." The chart identifies the current credit card balance, interest rate of 21%, and current monthly payment. With a flexible personal loan, Ladder Loans offers a reduced interest rate of 5.99%, a significantly lower monthly payment, and highlights both monthly and yearly savings.

28. The mailer continues stating that each Plaintiff has been "pre-approved for a Flexible Personal Loan;" however, the loan isn't limited to reducing monthly debt payments. Rather the loan can be used to get cash for any purpose, including home repairs or taking family on a much needed vacation. The process is described as flexible and convenient with the funds transferred directly into a bank account. Finally, the bottom of each mailer features a tear off style check payable to each Plaintiff.

## THE SCRIPTED TELEPHONE APPLICATION

29. In an effort to obtain the loan identified in the solicitation and associated monthly savings, on February 28, 2024, King called the phone number listed on the mailer to apply for the "loan." On April 20, 2024, Bader similarly called the phone number listed on the mailer to apply for the "loan."

30. The telephone calls made by each Plaintiff were highly scripted and nearly identical. Ladder Loans answers the call and immediately asks for the invite code listed on the mailer to access the fake offer of credit.

31. The representative then requests personal information as if the consumer was applying for a loan. After answering some basic financial questions, the consumer is placed on hold while the information is submitted for a loan approval.

32. Defendants, and their intake representative, all have actual knowledge that the consumer will not be approved for the loan listed on each mailer. In fact, the same criteria used to compile the pre-screened list are the same factors that would prevent a consumer from obtaining the loan described on the mailer. Despite this knowledge, Defendants, through their intake representative, obtained each Plaintiffs' consent to obtain a credit report under the false pretenses of being offered the loan displayed on the mailer.

33. Each Plaintiff was subsequently denied the loan. Neither Plaintiff received an adverse action letter within 30 days explaining why they were not offered a loan.

34. Rather, the representative immediately began soliciting each Plaintiff for a debt settlement program, the true purpose of the mailed solicitation. In each call, Plaintiffs were directed to stop paying their creditors and instead pay Defendants directly to negotiate for reduced debt.

## COMMON ELEMENTS TO THE CONSIPRACY

35. Defendants are each necessary components of this conspiracy. Ladder Loans obtained the prescreened lists and arranged for the marketing. ClearOne is the end user of the consumer data that would provide the debt settlement services.

36. Ladder Loans and ClearOne advertised a consolidation loan to entice Plaintiffs to call on the solicitation, but instead marketed debt settlement services. This is the classic and illegal "bait and switch" method of marketing.

37. Defendants never intended to offer a loan to Plaintiffs. The solicitation itself was a guise to obtain a targeted list from a consumer reporting agency as it is unlawful to obtain consumer reports for the purpose of marketing debt settlement services.

38. Defendants could not legally provide Plaintiffs with the loan as advertised in the purported firm offer of credit as neither have lending licenses in Ohio that would permit them to do so.

39. All Defendants knew that the data used in the marketing originated from a consumer reporting agency.

40. All Defendants knew the solicitation, as it exists and as it is described by Ladder Loans, was not a "firm offer of credit," and that Defendants had no intent to honor the loan terms as represented in the mailer.

41. All Defendants share, in some percentage, the fees paid by Ohio consumers.

42. The entire scheme is designed to impermissibly access Plaintiffs' private consumer reporting data because all Defendants know this targeted and direct marketing is extraordinarily profitable.

43. Plaintiffs were each mortified after discovering their most private financial data had been invaded by companies working within an industry that is widely known for unscrupulous business practices, including but not limited to, charging exorbitant fees to consumers without performing the promised services.

44. Obtaining and using a consumer report for marketing debt settlement is an impermissible purpose in violation of the FCRA, 15 U.S.C. § 1681b(f).

45. Plaintiffs did not authorize Defendants to access their consumer reporting data prior to Defendants accessing and using the data for an impermissible purpose.

46. Defendants are responsible for any of the actions of their agents under the doctrine of respondeat superior.

## COUNT ONE

**Violation of the Fair Credit Reporting Act**
**Willful Noncompliance, 15 U.S.C. § 1681n**

47. Plaintiffs repeat, reallege, and incorporate by reference all of the foregoing paragraphs.

48. Plaintiffs are each a "consumer" as defined by the FCRA, 15 U.S.C. § 1681a(c).

49. Defendants, alone or through a marketing agent, obtained information and data on Plaintiffs' credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living from a "consumer reporting agency" as defined by the FCRA, 15 U.S.C. § 1681a(f).

50. The information is therefore a "consumer report" as defined by the FCRA, 15 U.S.C. § 1681a(d).

51. The marketing agent then disclosed Plaintiffs' most private consumer reporting data to Defendants to populate Defendants' marketing campaign.

52. Defendants illegally accessed Plaintiffs' consumer report for the purposes of marketing a debt settlement program, and Defendants knew Plaintiffs, and any reasonable person, would be harmed by this invasion of privacy.

53. Defendants willfully obtained and used Plaintiffs' consumer reports without a permissible purpose in violation of 15 U.S.C. §§ 1681b and 1681n on two occasions:

(a) First, when Defendants claimed to the consumer reporting agency that Defendants were using the prescreened lists at issue for a firm offer of credit, knowing they were really accessing Plaintiffs' consumer reports to market debt settlement services—an impermissible purpose, and

(b) Second, when Defendants convinced Plaintiffs to give authorization to pull their consumer reports for a credit transaction knowing they were accessing Plaintiffs' reports on behalf of ClearOne, a debt settlement company that did not have authority to access Plaintiffs' consumer reports.

54. Defendants willfully obtained and used Plaintiffs' consumer reports to utilize the information for marketing debt settlement services. Under section 607 of the Fair Credit Reporting Act, it is clearly stated that the purpose for which a consumer report is sought must be certified, and that it must be further certified that the information will be used for no other purpose. 15 U.S.C. § 1681e.

55. Obtaining and using a consumer report for marketing is an impermissible purpose in violation of the FCRA, 15 U.S.C. § 1681b(f) on two occasions:

(a) First, when Defendants claimed to the consumer reporting agency that Defendants were using the prescreened lists at issue for a firm offer of credit, knowing they

were really accessing Plaintiffs' consumer reports to market debt settlement services—an impermissible purpose, and

(b) Second, when Defendants convinced Plaintiffs to give authorization to pull their consumer reports for a credit transaction knowing they were accessing Plaintiffs' reports on behalf of ClearOne, a debt settlement company that did not have authority to access Plaintiffs' consumer reports.

56. Due to Defendants' conduct, Plaintiffs have each suffered actual damages by Defendants' invasion of their privacy, including, but not limited to, mental and emotional hardship, physical, mental and emotional stress, anxiety, monetary damages, and embarrassment upon learning their most private financial data had been accessed and reviewed by companies and individuals that had no right to such information.

## COUNT TWO

### Violation of the Fair Credit Reporting Act
### Negligent Noncompliance, 15 U.S.C. § 1681o

57. Plaintiffs repeat, reallege, and incorporate by reference all of the foregoing paragraphs.

58. Defendants negligently obtained and used Plaintiffs' consumer reports without a permissible purpose in violation of 15 U.S.C. §§ 1681b and 1681o.

59. Due to Defendants' conduct, Plaintiffs have each suffered actual damages by Defendants' invasion of their privacy, including, but not limited to, mental and emotional hardship, physical, mental and emotional stress, anxiety, monetary damages, and embarrassment upon learning their most private financial data had been accessed and reviewed by companies and individuals that had no right to such information.

## COUNT THREE

**Violation of the Fair Credit Reporting Act**
**False Pretenses--15 U.S.C. § 1681q**

60. Plaintiffs repeat, reallege, and incorporate by reference all of the foregoing paragraphs.

61. Defendants accessed Plaintiffs' consumer reports under false pretenses on two occasions:

(a) First, when Defendants claimed to the consumer reporting agency that Defendants were using the prescreened lists at issue for a firm offer of credit, knowing they were really accessing Plaintiffs' consumer reports to market debt settlement services—an impermissible purpose, and

(b) Second, when Defendants convinced Plaintiffs to give authorization to pull their consumer reports for a credit transaction knowing they were accessing Plaintiffs' reports on behalf of ClearOne, a debt settlement company.

62. Defendants violated the FCRA by knowingly and willfully procuring information on Plaintiffs under false pretenses, 15 U.S.C. § 1681q.

63. 15 U.S.C. § 1681q has a private cause of action under 15 U.S.C. § 1681n.

64. All Defendants acted knowingly and willfully. Defendants' willful conduct is illustrated by the following:

(a) The FCRA was enacted in 1970; Defendants have had over 50 years to become compliant.

(b) Defendants violated a clear statutory mandate set forth in 15 U.S.C. § 1681q.

(c) All Defendants knew that they had no intention of making a firm offer of credit. Similarly, the individual Defendants knew the consumers responding to the

mailers had no business relationship with Defendants, were not being offered a credit transaction, but instead were being offered debt settlement services.

(d) Defendants systematically procured consumer information without a permissible purpose despite myriad statutory text and guidance.

(e) By adopting such a policy and practice, Defendants voluntarily ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless.

65. Due to Defendants' conduct, Plaintiffs are each entitled to statutory damages of not less than $100 and not more than $1,000 for each and every one of these violations, pursuant to 15 U.S.C. § 1681n(a)(1)(A); punitive damages, pursuant to 15 U.S.C. § 1681n(a)(2); and their costs and attorneys' fees, pursuant to 15 U.S.C. § 1681n(a)(3).

## COUNT FOUR

### Invasion of Privacy–Intrusion Upon Seclusion

66. Plaintiffs repeat, reallege, and incorporate by reference all of the foregoing paragraphs.

67. Defendants, through the conduct incorporated herein, have intentionally invaded Plaintiffs' privacy.

68. Defendants impermissible access of Plaintiffs' credit file under the false pretenses of a consolidation loan is highly intrusive and highly offensive to a reasonable person.

69. Defendants intentionally intruded upon Plaintiffs' solitude and seclusion.

70. Due to Defendants' conduct, Plaintiffs have each suffered actual damages by Defendants' invasion of their privacy, including, but not limited to, mental and emotional hardship, physical, mental and emotional stress, anxiety, monetary damages, and embarrassment upon

learning that their most private financial data had been accessed and reviewed by companies and individuals that had no right to such information.

## COUNT FIVE

### Violations of the Ohio Consumer Sales Practices Act

71. Plaintiffs repeat, reallege, and incorporate by reference all of the foregoing paragraphs.

72. The interactions between Plaintiffs and Defendants were each a "consumer transaction" as defined by R.C. § 1345.01(A) as Defendants solicited a service to Plaintiffs, each an individual, for purposes that are primarily personal, family, or household. Defendants did this by mailing Plaintiffs a solicitation to procure their business and each are "suppliers" as defined by R.C. § 1345.01(C). The purpose of the mailed solicitation was personal in nature and Defendants solicited Plaintiffs to provide debt settlement services in exchange for various fees.

73. Plaintiffs are each a "consumer" as defined by R.C. § 1345.01(D) as each engaged in consumer transactions with Defendants, a supplier. Defendants solicited Plaintiffs via the mailers attached as Exhibits A and B to this Complaint and invited them to call.

74. All parties are a "person" as defined by R.C. § 1345.01. A person includes an individual, corporation, government, governmental subdivision or agency, business trust, estate, trust, partnership, association, cooperative, or other legal entity. Plaintiffs are each a person and Defendants, each a legal entity, are also a person.

75. The mailers sent to Plaintiffs, as well as the ensuing telephone sales pitch for debt settlement services, were riddled with deceptive and fraudulent representations.

76. Defendants committed material unfair, deceptive, and/or unconscionable acts and practices in connection with a consumer transaction, primarily for personal, family or household purposes, in violation of the Ohio Consumer Sales Practices Act, including, but not limited to:

(a) Making false or misleading statements to induce a purchaser to pay for services in violation of R.C. § 1345.02(A).

(b) Knowing of the inability of the consumer to receive a substantial benefit from the subject of the consumer transaction.

(c) Using a sales presentation which makes the material facts of the offer misleading or conveys or permits an erroneous impression as to the services offered for sale.

(d) Defendants violated Ohio Admin. Code § 109:4-3-03(B)(2) and engaged in deceptive acts or practices in connection with a consumer transaction because the first contact it had with each Plaintiff was secured by through deception when Defendants sent a misleading letter to each Plaintiff.

(e) Defendants violated Ohio Admin. Code §109:4-3-10(A) and engaged in deceptive acts or practices in connection with a consumer transaction because Defendants made representations, claims, or assertions of fact about the status of Plaintiffs' debt balances, monthly payments, interest rates and high balance revolving debt in an effort to convince a reasonable consumer to call immediately and retain Defendants' services.

77. Plaintiffs were each in fact deceived by the alleged violations.

78. Due to Defendants' conduct, Plaintiffs have each suffered actual damages by the preceding violations, including, but not limited to, mental and emotional hardship, physical, mental and emotional stress, anxiety, embarrassment, and monetary damages.

## COUNT SIX

### Fraud

79. Plaintiffs repeat, reallege, and incorporate by reference all of the foregoing paragraphs.

80. Fraudulent conduct has been specifically alleged throughout this Complaint and incorporated into Count Six by reference. Plaintiffs specifically relied on the aforementioned representations, misrepresentations, non-disclosures and implied representations when making the determination whether to contact Ladder Loans and provide access to their consumer reports and other private financial data.

81. The Defendants' entire scheme is to mislead. Defendants misled the consumer reporting agency by obtaining protected FCRA data under false pretense, and misled Plaintiffs by tricking them into calling and disclosing additional data under the false pretense of offering a consolidation loan.

82. Specifically, Plaintiffs relied on all representations in Exhibits A and B in deciding to call Ladder Loans. These representations include, but are not limited to, the fact that Plaintiffs were pre-qualified for a consolidation loan, when, in fact, Defendants were only interested in marketing debt settlement services.

83. The Defendants' representations concerning the work it claimed it would perform were made falsely, with knowledge of their falsity, or with such utter disregard and recklessness as to whether the representations were true or false that knowledge may be inferred.

84. The representations were made with the intent of misleading Plaintiffs into relying upon them so Defendants could obtain money from Plaintiffs, as well as access to their consumer reports.

85. Plaintiffs were justified in relying upon the Defendants' representations. Plaintiffs have been injured by the wrongful and fraudulent conduct of Defendants and have been damaged in an amount to be established at trial, as well as entitled to punitive damages in an amount to be established at trial.

## COUNT SEVEN

### Civil Conspiracy

86. Plaintiffs repeat, reallege, and incorporate by reference all of the foregoing paragraphs.

87. Defendants conspired to illegally obtain and use data protected by the FCRA. The Defendants committed further crimes when they conspired to use the illegal data in a deceptive fashion. All Defendants knew the marketing scheme was both criminally and civilly illegal and they were joint actors and conspirators in the illegal marketing scheme.

88. The combined acts of Defendants have resulted in damages to Plaintiffs in the form of an invasion of privacy and the emotional damages resulting from such an invasion.

89. The combination of Defendants' actions and conduct as alleged herein constitute a civil conspiracy by way of an unlawful act independent of the conspiracy, namely fraud and the criminally illegal acts in violation of both the FCRA and the OCSPA resulting in an invasion of privacy.

## COUNT EIGHT

### Violations of the Equal Credit Opportunity Act

90. While Plaintiffs do not believe Defendants intended to offer a loan, should Defendants demonstrate they did make a firm offer of credit that was then denied for permissible reasons as outlined in the FCRA, then Defendants violated the Equal Credit Opportunity Act.

91. Defendants are a "creditor" as defined in 15 U.S.C. § 1691a(e) as they extended credit to Plaintiffs via mail; Defendants regularly extend credit and make credit decisions, including rejecting customer credit applications.

92. Plaintiffs are each an "applicant" as defined in 15 U.S.C. § 1691a(e) as they applied directly to Ladder Loans via telephone following the pre-approved offers that arrived in the mail.

93. Ladder Loans and/or its affiliate ClearOne failed to issue an adverse action notice following the denial of credit within 30 days of the denial as stated in Reg. B, 12 C.F.R. § 202.9(a)(1)(i).

94. The foregoing acts and omissions of Defendants constitute a violation of the ECOA.

95. As a result of Defendants' violation of 15 U.S.C § 1691, *et seq.*, Plaintiffs are entitled to an award of up to $10,000.00 in punitive damages for each violation pursuant to 15 U.S.C § 1691e(b).

96. Defendants are likewise entitled to and seek actual damages, as well as equitable and declaratory relief as set forth in 15 U.S.C §§ 1691e(b) and (c).

## PRAYER FOR RELIEF

ACCORDINGLY, Plaintiff Maxwell Bader requests this Court grant any or all of the following relief, against Defendants Blue Front Financial, LLC dba Ladder Loans and ClearOne Advantage, LLC:

(a) Actual damages for items including emotional distress, mental anguish, frustration, humiliation, and embarrassment.

(b) Statutory damages in an amount to be determined at trial.

(c) Punitive damages in an amount to be determined at trial.

(d) Costs and attorney fees as provided by statute.

(e) Declaratory and injunctive relief as appropriate.

(f) Any other relief the Court deems just.

Plaintiff Zacheriah King requests this Court grant any or all of the following relief, against Defendant Blue Front Financial, LLC dba Ladder Loans:

(a) Actual damages for items including emotional distress, mental anguish, frustration, humiliation, and embarrassment.

(b) Statutory damages in an amount to be determined at trial.

(c) Punitive damages in an amount to be determined at trial.

(d) Costs and attorney fees as provided by statute.

(e) Declaratory and injunctive relief as appropriate.

(f) Any other relief the Court deems just.

**[SIGNATURE BLOCKS ON THE FOLLOWING PAGE]**

Respectfully submitted:

*s/ Gregory S. Zuchowski*

Gregory S. Zuchowski (0098449)
Jeremiah E. Heck (0076742)
Luftman, Heck & Associates, L.L.P.
6253 Riverside Drive, Suite 200
Dublin, Ohio 43017
Phone: (614) 224-1500
Fax: (614) 224-2894
jheck@lawLH.com
*Trial Attorney for Plaintiffs*

**DEMAND FOR JURY TRIAL**

Please take notice that Plaintiffs demand trial by jury in this action.

*s/ Gregory S. Zuchowski*

Gregory S. Zuchowski (0098449)